[Cite as *In re L.W.*, 2022-Ohio-1482.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| IN THE MATTER OF: | JUDGES:<br>Hon. Earle E. Wise, Jr., P. J.<br>Hon. W. Scott Gwin, J.<br>Hon. John W. Wise, J. |
| L.W. | Case No. 2022 CA 00008 |
| Minor Child | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Juvenile Division, Case No. 2020 JCV 00376 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | May 3, 2022 |

APPEARANCES:

| For Appellee | For Appellant Father |
|---|---|
| BRANDON J. WALTENBAUGH<br>STARK COUNTY JFS<br>402 2nd Street, SE<br>Canton, Ohio 44702 | BERNARD L. HUNT<br>2395 McGinty Road, NW<br>North Canton, Ohio 44720 |

*Wise, John, J.*

**{¶1}**    Appellant-Father W.W. appeals the December 17, 2021, Judgment Entry entered by the Stark County Court of Common Pleas, Juvenile Division, which terminated his parental rights, privileges, and responsibilities with respect to his minor child, L.W., and granted permanent custody of the child to Appellee Stark County Department of Job and Family Services ("SCJFS").

## STATEMENT OF THE FACTS AND CASE

**{¶2}**    Appellant W.W. is the Father of the minor child L.W. born October 30, 2020. (T. at 10).

**{¶3}**    On April 22, 2021, Stark County Job and Family Services ("SCJFS") filed a Complaint alleging the dependency, neglect, and/or abuse of L.W. (DOB 10/30/20). (T. at 10). The allegations of the Complaint detailed concerns regarding Appellant's history with SCJFS regarding a different child, his criminal history, substance use, untreated mental health, and history of not complying with case plan services. (T. at 8-9).

**{¶4}**    On April 23, 2021, the trial court held an emergency shelter care hearing and found that probable cause existed for the involvement of SCJFS and that SCJFS had engaged in reasonable efforts to prevent the need for the removal of the child. The court found continued residence of the child with Appellant was contrary to his best interest of the child and approved and adopted the pre-adjudicatory orders requested by SCJFS, and granted temporary custody of the child to SCJFS. (T. at 10).

**{¶5}**    On July 7, 2021, the trial court found the child to be abused and placed him into the temporary custody of SCJFS. (T. at 10). The trial court also approved and adopted the initial case plan, found that SCJFS had made reasonable efforts to finalize the

permanency planning in effect, and found compelling reasons existed to preclude a filing of permanent custody. (T. at 10).

{¶6} On September 23, 2021, SCJFS filed a motion seeking permanent custody of the child. (T. at 10-11).

{¶7} On October 14, 2021, the trial court reviewed the case. The trial court approved and adopted the case plan, found that SCJFS had made reasonable efforts to finalize the permanency planning in effect, and ordered status quo. The trial court also found that no compelling reasons existed to preclude a filing of permanent custody. (T. at 11).

{¶8} On November 4, 2021, Attorney Kristen Guardado, the Guardian ad Litem for the child filed a report recommending that permanent custody be granted to the Agency.

{¶9} On December 16, 2021, the trial court conducted a hearing on the motion for permanent custody of the child. (Tr. at 3-23).

{¶10} Mother of the child stipulated to the motion. (T. 4-7).

{¶11} Appellant-Father did not attend the hearing. (T. at 2). Appellant-Father's counsel requested a continuance and stated that he had not had contact with Appellant-Father for "4 or 5 months". (T. at 7). The trial court denied that motion and proceeded with evidence. (T. at 7).

{¶12} SCJFS presented the following evidence regarding Appellant-Father and the child:

{¶13} Caseworker Kimberly Gabel testified for SCJFS. (T. at 8-16). Caseworker Gabel testified that she had been the assigned caseworker since December of 2020. (T.

at 9). Ms. Gabel testified that SCJFS had concerns regarding its history with Appellant-Father regarding a different child, criminal history, substance use, untreated mental health, and history of not complying with case plan services. (T. at 8-9). Ms. Gabel testified that Appellant-Father had an active warrant for a drug-related offense. (T. at 9). Ms. Gabel testified that SCJFS attempted to work with Appellant outside of the legal system, but it was unsuccessful. *Id.* Ms. Gabel testified that Appellant had not visited the minor child since May 27, 2021. (T. at 13). Ms. Gabel testified that Appellant's case plan included completing domestic violence treatment, Goodwill parenting classes, a substance abuse assessment, and compliance with drug screens. (T. at 11). Ms. Gabel testified that Appellant failed to begin domestic violence treatment, failed to comply with substance abuse treatment, and failed to comply with drug screens. (T. at 12). She testified that Appellant also failed to complete Goodwill parenting classes. (T. at 13). Ms. Gabel testified that Appellant was homeless and had only sporadic contact with her throughout the case. *Id.* SCJFS rested for its first portion of the permanent custody trial, and the trial court proceeded to the second phase of the trial. (T. at 16).

{¶14} SCJFS presented the following testimony regarding the best interests of the child:

{¶15} Caseworker Gabel testified that the child had multiple health issues due to being born prematurely and in utero exposure to drugs. (T. at 17). Ms. Gabel testified that the child has DiGeorge Syndrome, developmental delays, and multiple other issues. *Id.* Ms. Gabel testified that the child was placed with a third-party placement and that the family was adequately caring for L.W., that he was thriving there, and that the family wanted to adopt the child. (T. at 18-19). Ms. Gabel testified that the placement family had

already adopted L.W.'s siblings. (T. at 18). Ms. Gabel testified that there was no bond between the child and Appellant-Father due to Appellant-Father having failed to visit the child since May 21, 2021. (T. at 20). Ms. Gabel further testified that the child would benefit from adoption, and that permanent custody was in his best interest. *Id.*

**{¶16}** Attorney Guardado, the Guardian ad litem, reiterated her recommendation that permanent custody was in the best interest of L.W., and that the child's placement was the "best possible placement". (T. at 21-22).

**{¶17}** At the conclusion of testimony and evidence, the trial court granted the motion for permanent custody from the bench. (T. at 23).

**{¶18}** By Judgment Entry filed December 17, 2021, the trial court issued its findings of fact, granting permanent custody of the child to SCJFS and terminating the parental rights of Appellant-Father and mother. Specifically, the trial court found that, despite reasonable efforts by SCJFS, the child could not and should not be placed with Appellant-Father within a reasonable amount of time, that Appellant-Father had abandoned the child, and that the grant of permanent custody was in the child's best interests.

**{¶19}** It is from this judgment entry Father appeals, assigning the following errors:

### ASSIGNMENTS OF ERROR

**{¶20}** "I. THE JUDGMENT OF THE COURT THAT L.W. (DOB 10-30-20) COULD NOT BE PLACED WITH THE FATHER WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

**{¶21}** "II. THE TRIAL COURT'S JUDGMENT FINDING THAT L.W.'S BEST INTEREST WOULD BE SERVED BY GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

**{¶22}** This case comes to us on the expedited calendar and shall be considered in compliance with App.R. 11.2(C).

I., II.

**{¶23}** We elect to address Father's first and second assignments of error together. In his first assignment of error, Father maintains the trial court's finding L.W. could not be placed with him within a reasonable time was against the manifest weight and sufficiency of the evidence. In his second assignment of error, Father contends the trial court's finding an award of permanent custody was in the best interest of L.W. was against the manifest weight and sufficiency of the evidence

**{¶24}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* Stark App. No. CA5758 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶25}** R.C. §2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. §2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody

of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶26} Following the hearing, R.C. §2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶27} In determining the best interest of the child at a permanent custody hearing, R.C. §2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶28}** Therefore, R.C. §2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. §2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶29}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. §2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. §2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶30}** As set forth in our Statement of the Facts and Case, *supra*, we find there was competent, credible evidence Father failed to remedy the problems which caused the removal of L.W. from the home. The trial court found by clear and convincing evidence that Appellant-Father had abandoned the child by failing to visit him for a period greater than 90 days, and that Appellant- Father had failed to remedy the conditions which caused the child to be placed in the care and custody of SCJFS.

**{¶31}** With respect to the best interest finding, the evidence revealed L.W. has no bond with Father and only a minimal bond with Mother. L.W. is doing well in his foster placement and is bonded with the foster parents. The foster parents have already adopted three of his maternal cousins and wish to adopt him also. The foster parents have been strong advocates for L.W. with regard to his medical needs and have been able to secure

him care with a team out of Nationwide Hospital in Columbus which deals specifically with DiGeorge Syndrome. L.W. needs stability, routine and permanency in his life. Additionally, the guardian ad litem filed a report wherein she opined the best interest of L.W. would be served by granting permanent custody to SCJFS. The GAL stated that L.W. "hit the lottery" with these foster parents.

**{¶32}** Based upon the foregoing, we find the trial court's findings that L.W. could not be placed with Appellant-Father within a reasonable time and that an award of permanent custody was in the child's best interest were not against the manifest weight of the evidence and were based upon sufficient evidence.

**{¶33}** Appellant-Father's two assignments of error are overruled.

**{¶34}** For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is affirmed.


By: Wise, John, J.

Wise, Earle, P. J., and

Gwin, J., concur.



JWW/kw 0429